**Swanson v. Forest County Tax Claim Bureau**

*David W. Swanson,* of *Swanson, Bevevino and Millin,* for plaintiffs.

*Joseph E. Altomare,* for defendant.

WOLFE, *P.J.,* December 12, 1977—Plaintiffs seek injunctive relief from the sale of their premises in the nature of a restraining order against defendants who proposed to make public sale thereof pursuant to the Real Estate Tax Sale Law of July 7, 1947, P.L. 1368, 72 P.S. §5860.101. We granted an ex parte injunction pending argument.

The case is before us on a statement of stipulated facts thus leaving a question of law only as to the validity of the proposed sale for delinquent taxes.

Plaintiffs acquired 15.91 acres situate in the Village of West Hickory, Harmony Township, from Dolores B. Cropp et al. on April 14, 1975, and the deed was duly recorded. Prior to this purchase plaintiffs' grantor sold to various individuals the dwelling houses only erected upon the land coupled with a lease for a term of years for that portion of ground beneath each dwelling. By this method plaintiffs' predecessors retained title to the entire acreage subject to the lease arrangements which, from the stipulation we learn were six in number.

One of these arrangements for the sale of the dwelling but retention of a land-lease was with Glenn Barnes. Defendant assessed the several properties, including the Barnes' house in the following manner:

| File Number | Map or Parcel No. | Assessed Value | | Name & Address | Property Description |
|---|---|---|---|---|---|
| 024100 | 04A 168 | L<br>B<br>T | 0<br>770<br>770 | Cropp, Dolores B. et al. 7<br>% Glenn Barnes | house only |

At argument it was agreed under this manner and system of property identity the symbols under the heading of assessed value represented "L" equals land, "B" equals building and "T" equals total. The number 17 is not significant, however, "house only" does not include any land.

The several lessees paid their taxes for the year 1975 except Glenn Barnes and it was stipulated he and plaintiffs received proper notice of the delinquency and proper notice of the proposed tax sale.

Defendant argues it is authorized and has the duty to lien the entire 15.91 acres identified under the heading map or parcel number 04A 168 whenever any portion of the total acreage is tax delinquent. This argument is bottomed in the logic the whole is composed of its parts and simply because the identity of the whole is assessed in parts does not make the whole any the less delinquent when one of the parts is delinquent. The argument continues if the owner makes only a partial payment on one tract he may not salvage any portion thereof at a tax sale because of the partial payment. Defendant further argues the six leases were owned by Dolores B. Cropp et al. and all were identified as such on the assessment records and the methodology in this manner of assessing was merely one of convenience for the landowner so each lessee would be appraised of his respective share of taxes depending if they were assessed with land and building or merely with a building or with land only.

To defendant's position plaintiffs argue that de-

spite the fact there is but one owner of the entire property if the assessment has been made in parts, when one part becomes delinquent the assessments may not be combined for purposes of sale of the entire property.*

We have been unable to find in our research any precedent to resolve this issue; however, although we agree with the universal logic of defendants, we do not believe this now established philosophical law is legally sound under the tax code.

The Real Estate Tax Sale Law is the method for a municipality to collect delinquent taxes. The taxes are levied against the res and if delinquency occurs the collection thereof is in rem and not in personam.

Boulton v. Starck, 369 Pa. 45, 85 A. 2d 17 (1951), speaks to the duty of the treasurer to separately assess different parcels for tax purposes holding: "Property separately assessed must necessarily be separately sold at tax sales for the tax lien on one property is not a lien on the other even if the ownership be the same. This has been the recognized practice for over a century and must remain so until the legislature sees fit to make a change."

Section 306(a) provides for the return of property and delinquent taxes in this language:

"(a) It shall be the duty of each receiver or collector of any county . . . to make a return to the county bureau on or before the first Monday of May of each year, a list of all properties against which taxes were levied, the whole or any part of which were due and payable in the calendar year immediately

---

*Neither party is certain how the initial method of assessment occurred, however, both theorize it was for the convenience of Dolores Cropp and the lessees so the latter would have a more objective appraisement of their respective interests.

preceding which remain unpaid, giving the description of *each such property, as it appears in the tax duplicate,* together with the amount of such unpaid taxes, penalties and interest due to but not including the first Monday of May of the year of return. . . ." (Emphasis supplied.)

Here, the return of the treasurer for uncollected taxes identifies the above parcel in accordance with the assessment as indicated supra and particularly shows a description of the property as "04A 168 17 house only."

Section 305 of the act governing claims against property owned by joint tenants and tenants in common provides a procedure for one joint tenant or tenant in common who has paid his proportional share of taxes to compel the bureau to release from its delinquent claim the estate, title or interest of any joint tenant or tenant in common who has made payment of his proportionate amount of taxes. So too, section 310 of the act provides in cases where a tax is levied on "separate and distinct property as one estate, the taxing district shall, upon request before a claim therefor is entered in the claim docket, apportion the same rateably upon the separate and distinct properties."

The separate assessment as used by defendants is authorized in The Fourth to Eighth Class County Assessment Law of May 21, 1943, P.L. 571, art. I, sec. 101, 72 P.S. §5453.101.

Section 201(a) of that act provides for subjects for taxation which includes houses.

We recognize the assessment and the return thereon was identified by defendants to Dolores B. Cropp in care of Glenn Barnes as the owner or reputed owner of the premises; however, we conclude it would be improper because of the separate as-

sessment concerning the Glenn Barnes house to permit the return and sale of the whole tract on the theory defendant may use one method to assess the property in parts but return and sell the property as a whole.

If the treasurer used one method to assess the res the same method must be used to return and collect the delinquency. Indeed, under the system utilized we do not see how the taxes on the land could be delinquent with a "zero" assessment. In this respect there has been no return of the entire res of 15.91 acres in any event.

We believe more urgently, as a matter of law, plaintiffs' predecessor in title by entering into the sale of the house separate from the premises and the accompanying lease agreement created a separate and distinct taxable estate which defendants recognized and so assessed separately, that is, the land from the building.

To hold otherwise would render section 310 and section 305 a nullity.

For the foregoing reasons we enter the following

## ORDER

And now, December 12, 1977, the preliminary injunction issued is made absolute against defendants and the treasurer is directed to strike the subject premises of 15.91 acres situate in the Village of West Hickory, Harmony Township, 04A 168.7 owner or reputed owner Swanson, David W. et al, Glenn Barnes % Carringer, Swanson and Millin, Tionesta, Pennsylvania from the tax sale list.

Costs to be borne by defendants.